THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEAN TIMOTHY O'NEILL,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S FIRST STEP ACT MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)**<br><br>Case No. 4:18-cr-00014-DN<br><br>District Judge David Nuffer |

**BACKGROUND**

Prisoner Sean Timothy O'Neill ("O'Neill") filed a First Step Act Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A) ("First Step Act Motion"),[1] seeking to be released early from federal prison.[2] O'Neill was first placed in federal custody on January 2, 2018; was sentenced March 5, 2020; and is serving a 10-year sentence.[3] The Bureau of Prisons ("BOP") calculates O'Neill's projected release date as August 5, 2026, assuming good conduct time.[4]

**DISCUSSION**

18 U.S.C. § 3582(c) states that a "court may not modify a term of imprisonment once it has been imposed." However, under subsection (1)(A), "the court" … "may reduce the term of

---

[1] First Step Act Motion to Reduce Sentence ("First Step Act Motion"), docket no. 117, filed Sep. 26, 2022.

[2] First Step Act Motion at 4.

[3] First Step Act Relief Eligibility Report ("Eligibility Report"), docket no. 123, filed under seal Dec. 14, 2022.

[4] Eligibility Report at 3.

imprisonment" after the Director of the BOP or the defendant themselves brings a motion for the reduction (after exhausting internal administrative appeals). The First Step Act, which was passed December 21, 2018,[5] amended 18 U.S.C. § 3582(c)(1)(A), allowing defendants to bring their own First Step Act motions instead of relying solely on the Director of the Bureau of Prisons ("the Director") to do so.[6]

The 10th Circuit adopted a three-part test[7] for "courts considering motions filed under § 3582(c)(1)"[8] to reduce a defendant's prison sentence. First, a court must "find that extraordinary and compelling reasons warrant such a reduction"; second, the reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and third, a court considers the factors from § 3553(a) if they are applicable.[9] "[W]hen any of the three prerequisites listed in § 3582(c)(1)(A) is lacking," the court may deny the motion without addressing the other factors.[10]

"[N]either § 3582(c)(1)(A)(i), nor any other part of the statute, defines the phrase 'extraordinary and compelling reasons' or indicates that the Sentencing Commission is charged with defining the phrase."[11] Instead, "Congress intended to afford district courts with discretion…to independently determine the existence of 'extraordinary and compelling reasons'"[12] so long as the discretion is in line with the policy statements by the Sentencing

---

[5] PL 115-391, December 21, 2018, 132 Stat 5194.

[6] *Id.*

[7] *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021).

[8] *Id.* at 1042 quoting *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020).

[9] *See* 18 U.S.C. § 3582(c)(1)(A); *McGee*, 992 F.3d at 1042.

[10] *McGree*, 992 F.3d at 1043, quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

[11] *McGree*, 992 F.3d at 1043.

[12] *Id.* at 1044.

Commission,[13] i.e., so long as that discretion is "bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[14] The policy statements in 28 U.S.C. § 994 require that: "[t]he Commission…shall promulgate and distribute to all courts of the United States…general policy statements regarding the application of the guidelines…including the appropriate use of…the sentence modification provisions set forth in section…3582(c) of title 18,"[15] and "shall describe what should be considered extraordinary and compelling reasons for sentence reduction"[16] in "the sentencing modification provisions in section 3582(c)(1)(A) of title 18."[17]

The "obvious response"[18] of the Sentencing Commission is the Commentary to U.S.S.G. § 1B1.13, which has four subcategories of "Extraordinary and Compelling Reasons" as to the defendant: medical conditions, age, family circumstances, and other.[19] The medical conditions include "a terminal illness"; "a serious physical or medical condition"; "a serious functional or cognitive impairment"; or deteriorating health because of aging.[20] Family circumstances include "death or incapacitation of the caregiver of the defendant's minor child or minor children" and "incapacitation of the defendant's spouse or registered partner when the defendant would be the

---

[13] *Id.*; *See* USSG § 1B1.13 Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement).

[14] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[15] 28 U.S.C. § 994(a)(2)(C).

[16] *Id. at* § 994(t).

[17] *Id.*

[18] *Maumau*, 993 F.3d at 835.

[19] U.S.S.G. 1B1.13 cmt. n.1.

[20] *Id.* at cmt. n.1(A).

only caregiver for the spouse or registered partner."[21] "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason."[22]

While this language in the Commentary to U.S.S.G. § 1B1.13 is helpful, it is not binding on district courts. "[The 10th Circuit] conclude[d]…that the Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."[23] This is because U.S.S.G. § 1B1.13 only identifies the Director as someone who can bring a First Step Act motion.[24] The Sentencing Commission could not update U.S.S.G. § 1B1.13 until there were four (of the seven) voting Commission members present to vote.[25] From 2018 (when the First Step Act was passed) through August 5, 2022, there were only two voting members.[26]

Therefore, because courts are "free to define 'extraordinary and compelling reasons' for [our]selves,"[27] we must "exercise [our] independent authority and discretion"[28] for our analysis.

The parties agree that O'Neill exhausted his administrative remedies prior to filing his First Step Act Motion.[29] He gave two reasons in asking for early release:

1. so that he can care for his ailing parents;[30] and

---

[21] *Id.* at cmt. n.1(C).

[22] *Id*. at cmt. n.2.

[23] *McGee*, 992 F.3d at 1050.

[24] U.S.S.G. 1B1.13.

[25] *McGee*, 992 F.3d at 1049-50.

[26] *Id.* at 1050; https://www.ussc.gov/about/news/press-releases/august-5-2022 (last visited December 21, 2022).

[27] *United States v. Carr*, 851 F. App'x 848, 854 (10th Cir. 2021).

[28] *Id.* at 853.

[29] United States' Opposition to Defendant's Motion for Reduction of Sentence Under 18 U.S.C. § 3582(c)(1)(A) ("Opposition"), docket no. 120 at 2, filed October 31, 2022; Motion to Reduce Sentence at 4.

[30] First Step Act Motion at 5.

2. so that he can receive the medical care that he needs.[31]

**Care for Parents:** O'Neill lays out a partial medical history for his parents. He claims that at ages 76 and 74 respectively, they "are no longer physically able to care for themselves and are in need of a caregiver."[32] This is confirmed by a letter from Patricia Kindsvater, M.D., a Michigan-based doctor, dated March 7, 2022, which states that O'Neill's parents "are under [her] care, and due to their health and mobility issues are no longer safe to live alone, and require a live-in caregiver."[33] The letter does not say that O'Neill himself is required to be the caregiver; what kind of caregiver is required; the extent of the caregiving services required; the medical knowledge the caregiver is required to have; or O'Neill's suitability as a caregiver.

O'Neill claims that "[p]rior to [his] incarceration, [he] financially provided for [his parents] on a regular basis."[34] And his mother in a letter stated that "[h]e could also help financially as with the price of food and meds we are having a hard time with our bills and live check to check."[35] However, O'Neill failed to provide any further detail or proof.

O'Neill details how his mother was in the hospital for the entirety of August 2022 "due to a terrible infection from a surgery"[36] she had previously undergone. His mother describes that her and her husband's daily life is complicated due to their medical conditions.[37] She states she wants O'Neill to be released because he "could help around the house and take care of the

---

[31] *Id.* at 6-10.

[32] *Id.* at 2.

[33] *Id.* Exhibit 1 at 2.

[34] First Step Act Motion at 5.

[35] *Id.* Exhibit 2 at 4.

[36] First Step Act Motion at 5.

[37] *Id.* Exhibit 2 at 2-3.

grounds."[38] O'Neill discusses how his sister is "currently taking care of both [of his parents],"[39] and is physically and emotionally drained by it.[40] She confirmed this in her own letter[41] and she included medical documents to illustrate her current health issues.[42]

**O'Neill's Need for Medical Care:** O'Neill' second claim is about his own medical issues. These includes "ruptured discs in [his] lower back and tears in [his] right shoulder having to do with [his] rotator cuff and damage to the joint due to being attacked while in custody."[43] These injuries appear to be inconsistent with the caregiving duties he proposes to take on, and he does not explain any disparity. "An MRI also indicated shadows and growth on [his] prostate that are characteristic of prostate cancer."[44] He claims that "because of the Covid lockdowns, [his] medical care has been neglected."[45]

However, his medical records indicate that he has not only had ample access to medical care, he has received medical attention. He underwent a colonoscopy on November 12, 2021.[46] He had an MRI for his prostate on January 7, 2022.[47] He saw George Salama, M.D., on March 15, 2022 for a follow up appointment[48] and had a another follow up appointment on June 6,

---

[38] *Id.* at 4.

[39] First Step Act Motion at 5.

[40] *Id.* at 6.

[41] *Id.* Exhibit 7.

[42] *Id.* Exhibit 8.

[43] First Step Act Motion at 7.

[44] *Id.*

[45] *Id.*

[46] Opposition Exhibit B at 212-15.

[47] *Id.* at 393-94.

[48] *Id.* at 382-83.

2022.[49] He received a fourth dose of the COVID-19 vaccine on April 29, 2022.[50] On June 21, 2022, he had an appointment regarding "numbness in his left arm,"[51] and another exam on September 19, 2022 for his right shoulder.[52] And he received the Influenza Vaccine on October 7, 2022.[53] Finally, he refused treatment for a decaying molar on March 14, 2022.[54]

## CONCLUSION

O'Neill has failed to show that his circumstances are "extraordinary and compelling" enough to warrant early release. The need to care for his parents is not well enough defined. His medical care needs are being well met.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion for Sentence Reduction[55] is DENIED.

Signed December 28, 2022.

BY THE COURT

David Nuffer
United States District Judge

---

[49] *Id.* at 368-69, 372-74.

[50] *Id.* at 378.

[51] *Id.* at 364-65.

[52] *Id.* at 361-62.

[53] *Id.* at 358.

[54] *Id.* at 385.

[55] First Step Act Motion, docket no. 117.